UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT LEVINE and FREIDA ZAMES,

        Plaintiffs,

        vs.

TRUMP INTERNATIONAL HOTEL &
TOWER CONDOMINIUM, ONE CENTRAL
PARK WEST PT, and THIT COMMERCIAL,
LLC, jointly and severally.

        Defendants

---

TRUMP INTERNATIONAL HOTEL &
TOWER CONDOMINIUM, THIT
COMMERCIAL, LLC

        Third-Party Plaintiffs,

        vs.

ONE CENTRAL PARK WEST PT
ASSOCIATES LIMITED PARTNERSHIP,
PHILIP JOHNSON RITCHIE & FIORE
ARCHITECTS, CK ARCHITECT, P.C., and
CANTOR SEINUK GROUP, P.C., jointly and
severally.

        Third-Party Defendants.

DOCKET NO. 01-5518 (RJH)

---

## DEFENDANTS' TRUMP INTERNATIONAL HOTEL AND TOWER CONDOMINIUM AND THIT COMMERCIAL, LLC., BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFF'S CLAIMS

PECKAR & ABRAMSON, P.C.
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434
Attorneys for Defendants/Third Party Plaintiffs,
Trump International Hotel and Tower Condominium, THIT Commercial, LLC.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ......................................................................ii

PRELIMINARY STATEMENT ................................................................ 1

THE PLEADINGS ...................................................................................... 1

THE FACTS ................................................................................................ 3

POINT I ........................................................................................................ 6

    SUMMARY JUDGMENT STANDARD .............................................. 6

POINT II ...................................................................................................... 7

    PLAINTIFF'S CLAIMS REGARDING DOORMAN ASSISTANCE ARE MOOT AND PLAINTIFF LACKS STANDING TO SUE REGARDING KEY USAGE AND LIFT SIGNAGE. ....................................................................... 7

        A.   Injunctive relief and attorney's fees are the only remedies available to private ADA Plaintiffs. .................................................................... 7

        B.   Injunctive Relief Requires a Showing of imminent future injury, not simply an injury in the past. ................................................................. 8

        C. Plaintiff's Claim Regarding the Access to Lift Keys Is Moot.......................... 9

        D.  Plaintiff lacks standing for alleged violations that pertain to sight or dexterity impairments........................................................................... 11

POINT III..................................................................................................... 12

    DEFENDANTS INCREASED ACCESSIBLITY BY INSTALLING WHEELCHAIR LIFTS DURING THE 1995 RENOVATION........................... 12

        A.     In alterations, Wheelchair lifts are an appropriate element of an accessible path of travel. ..................................................................... 12

        B.    Wheelchair Lifts Must be Key Operated as a Matter of Law. ................. 15

POINT IV ................................................................................................... 16

    ALL CLAIMS AGAINST TIHT COMMERCIAL, LLC., SHOULD BE DISMISSED............................................................................................ 16

CONCLUSION............................................................................................. 17

i

# TABLE OF AUTHORITIES

## CASES

*Access 4 All v. Trump Intern. Hotel & Tower Condominium*, 458 F. Supp. 2d 160 (S.D.N.Y. 2006) ................................................................................................ 11,17

*Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)* ....................................... 6

*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994)................................. 6

*Azrelyant v. The Manischewitz Co.,* 2000 Westlaw 264345 (E.D.N.Y. 2000) ................. 10

*Barilla v. Ervin*, 886 F.2d 1514 (9th Cir. 1984)................................................. 6,9

*Bouboulis v. Transport Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006)* .............. 6

*Bradford v. The Barge B-10, 1999 Westlaw 1256248 (S.D.N.Y. 1999)*............................. 6

*Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) ............................................................................................... 11

*Campbell v. Griesberger*, 80 F.3d 703 (2d Cir. 1996) ....................................... 10

*Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)............................................. 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................... 6

*Delaware & Hudson Railway v. Consolidated Rail Corp.*, 902 F.2d 174 (2d Cir. 1990)............................................................................................... 7

*Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower*, 2003 WL. 1751785 (S.D.N.Y.) ................................................................. 11

*Emenick v. Kahala L & L, Inc.*, 2000 Westlaw 687662 (D.Hawaii 2000)...................... 10

*Independent Housing Services of San Francisco v. Fillmore*, 840 F. Supp. 1328 (N.D.Cal. 1993)..................................................................................... 10

*Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698 (D.Or. 1997)................................................................................................. 10

*J.S. & M.S. v. Ramapo Central School District*, 165 F. Supp. 2d 570 (S.D.N.Y.2001) ..................................................................................... 11

*Levy v. Mote, et al.*, 104 F. Supp. 2d 538 (D.Md. 2000)...................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................................................................................. 8

*Maloney v. Federal Collection Deposit Group*, 193 F.3d 1342 (11th Cir. 1999)............... 8

*Mancuso*, 130 F. Supp. 2d at 596 ................................................................................... 17

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............. 6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir.
        1985).................................................................................................................... 9

*National Fire Insurance Co. v. Deloach,* 708 F.Supp. 1371, 1379 (S.D.N.Y.
        1989).................................................................................................................... 7

*New York State National Organization for Women v. Terry*, 886 F.2d 1339 (2d
        Cir. 1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532
        (1990) .................................................................................................................. 8

*O'Brien v. Werner Bus Lines, Inc.*, 1996 Westlaw 82484 (E.D.Pa., 1996 ...................... 10

*Parr v. L & L Drive Inn Restaurant*, 96 F. Supp. 1065 (D. Hawaii 2000) ...................... 10

*Perry v. Village of Arlington Heights*, 186 F.3d 826 (7th Cir. 1999) ................................ 8

*Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir. 1992) ................................ 9

*Quindlan v. Freeman Decorating, Inc.,* 160 F.Supp.2d 681, 684 (S.D.N.Y. 2001) ........... 7

*R.G. Group, Inc. v. Horn & Hardart*, 751 F.2d 69, 77 (2d Cir. 1984)............................... 7

*Rodriquez ex rel. Rodriquez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ........................... 8

*Russo v. Banc of America Securities, LLC,* 2007 WL 1946541 ........................................ 7

*Sanders v. Madison Square Garden, L.P.*, 2007 WL 1933933 (S.D.N.Y.) ....................... 6

*Stan v. Wal-Mart Stores*, 111 F. Supp. 2d 119 (N.D.N.Y. 2000) ...................................... 7

*Steger v. Franco*, 228 F.3d 889 (8th Cir.2000) ................................................................ 11

*Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ........................................ 8

*United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) .............. 9,10

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S. Ct. 1798, 72 L. Ed. 2d 91
        (1982) ................................................................................................................ 8,9

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ........................................... 7

*Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) .......... 7

*Woerner v. United States Small Bus. Admin.*, 934 F.2d 1277 (D.C.Cir. 1991).................. 9

*Wooden v. Board of Regents of University System of Georgia, et al.*, 247 F.3d
    1262 (C.A. 11 (Ga.)) ........................................................................................... 8

*Yakus v. United States*, 321 U.S. 414, 64 S. Ct. 660, 88 L. Ed. 834 (1944) ...................... 9

## STATUTES

42 U.S.C. § 12181(9) ........................................................................................ 13

42 U.S.C. § 12182(b)(2); ................................................................................... 13

42 U.S.C. §12183(b) ......................................................................................... 14

28 C.F.R. § 35.151(c) .................................................................................... 12,15

28 C.F.R. § 36.304(a) .................................................................................... 13,14

28 C.F.R. § 36.401(d) ...................................................................................... 14

28 C.F.R. § 36.403(e) ................................................................................... 12,14

28 C.F.R. Part 36, Appendix ............................................................................ 13

F.R.C.P. 25(a)(1) ............................................................................................... 1

Fed.R.Civ.P. 56(c) .......................................................................................... 12

TAM III-7.7000(1) ..................................................................................... 12,14,15

## MISCELLANEOUS

ASME A17.1 Safety Code for Elevators and Escalators, Section XX, 1990 .............. 15,16

## PRELIMINARY STATEMENT

Defendants Trump International Hotel & Tower Condominium (the "Condominium") and THIT Commercial, LLC (hereinafter "Commercial" or "TIHT") submit this Brief in support of their motion for summary judgment dismissing Plaintiff's claims in their entirety.

Plaintiff, Robert Levine, is a wheelchair using resident of New York City.[1] Condominium is an unincorporated association of owners of private residential and hotel condominium units within the Trump International Hotel and Tower located at One Central Park West in New York City, New York (the "Building"). Commercial is the owner the commercial unit leased to a non-party which operates the Jean Georges restaurant. Plaintiff's two visits to the restaurant gave rise to this lawsuit.

Plaintiff essentially alleges that the location, operation and directional signage relating to an exterior wheelchair lift at the Building violates the ADA as well as New York State and New York City accessibility laws. The Complaint must be dismissed for failure to state a claim, lack of standing and mootness.

## THE PLEADINGS

Plaintiff Levine alleged that he "enjoys dining out, and patronizes restaurants in the neighborhood of Defendants' properties, has attempted to dine at the Defendants' restaurants and desires to dine at Defendants' restaurants in the future." (Complaint, ¶ 3). Levine alleges that "by virtue of the barriers", he has been denied "full and equal enjoyment of Defendants' goods and services." (Complaint ¶10).

Plaintiff has since amended his Complaint twice to assert additional claims against Condominium, and to also add Commercial and One Central Park West PT Associates Limited

---

[1] Plaintiff, Freida Zames is deceased and no longer a party to this action, pursuant to F.R.C.P. 25(a)(1). Plaintiff, Disabled in Action was dismissed from this action because the organization lacked standing. (April 2, 2004 Order of Judge Mukasey).

Partnership ("Sponsor"), as individually named Defendants.  Condominium and Commercial

have timely filed Answers in response to Plaintiff's Amended and Second Amended Complaint,

denying Plaintiff's allegations and asserting affirmative actions.  (See Generally Answer to

Amended Complaint, Exhibit E; Answer to Second Amended Complaint, Exhibit H). [2]

The Complaint alleges the following violations of the ADA:

(a) locked wheelchair lifts bar all independent access to the property by wheelchair and

scooter users in violation of ADAAG 4.11.3 and CABO/ANSI A117.1-1992 (4.11);

(b) the absence of lever-like key or operating mechanisms on the lifts as required by

ADAAG 4.27.4 and CABO/ANSI A117.1-1992 (4.25.4);

(c) the absence of signage on or to the lifts as required by ADAAG 4.1.2(7) and 9

NYCRR Subchptr B. Art. 13 Pt. 1101.1(e)(1) & 1101.2(d);

(d) failing to maintain wheelchair lifts in operable condition as required by 28 CFR

36.211;

(e) the property was altered in a matter that decreased the accessibility of the Building;

(f) no accessible route exists to connect the east side of the building with the west side of

the building; and

(g) the entrance for disabled persons does not coincide with the entrance for the general

public.

Plaintiff also cites without particularity the New York State Human Rights Law

("SHRL"), and the New York City Human Rights Law ("CHRL").  Plaintiff seeks injunctive

relief, attorney fees and punitive damages.

---

[2] Condominium and Commercial also filed Third Party claims against Sponsor, Philip Johnson Ritchie & Fiore Architects ("PJRF"), CK Architect, P.C. ("CK"), Cantor Seinuk Group, P.C. ("Cantor Seinuk"), and Leslie E. Robertson Associates ("LERA") (hereinafter collectively "Third Party Defendants")  (See Exhibit G, Third Party Complaint).  All claims by Third Party claims were previously dismissed except claims for breach of contract against the Sponsor.

## THE FACTS

The Building was built in 1969 as an office tower known as the Gulf & Western Building. (See 56.1 Statement[3] ¶ 26). The Building rests, as it did in 1969, on a pedestal (or "Plaza") whose surface is approximately four feet above the sidewalks that border the North, South, East and West sides of the Building: the 61st Street, 60th Street, Central Park West and Broadway Avenue sidewalks respectively. Since 1969, the main lobby entrances have been located on the elevated Plaza level. (See 56.1 Statement ¶ 27).

By 1995, the Building became obsolete as an office building and major alterations in design and use became necessary to maintain Building viability. In 1995, the Condominium altered the interior of the Building and created three lobbies, at the previously existing main lobby level, to provide access to three new and separate use areas of the Building and the elevator banks servicing them: Residential, Hotel and Restaurant. (See 56.1 Statement ¶ 28). The main lobby entrances are located, as before, on the Plaza facing East on Central Park West. (See 56.1 Statement ¶ 28). The Condominium does not own or operate any restaurants within the Building. (See 56.1 Statement ¶ 29). Commercial is the lessor of the two (2) commercial units of the building, the restaurant and the garage. (See 56.1 Statement ¶ 30).

Prior to the alteration, only stairs provided immediate vertical access from the surrounding sidewalks to the elevated main lobby entrances. As part of the alteration, The Condominium created an "accessible path of travel" from street level to the elevated Building entrance by installing two key-operated exterior platform lifts ("lifts") to provide vertical access from the adjacent sidewalks to the elevated main lobby entrances. One lift is located at the

---

[3] 56.1 Statement refers to Condominium's and Commercial's Rule 56.1 Statement of Undisputed Material Facts.

South-West corner of Central Park West and 61st Street (the "Front Lift"), the other is located

further West on 61st Street (the "Rear Lift"). (See 56.1 Statement ¶ 31).

The lifts are constructed out of polished stainless steel and glass with elevator-like

control panels and call buttons. The lifts are fully integrated into granite-faced Plaza and

surrounding landscaping. They are approved by the New York City Department of Buildings as

complying with local laws and have been successfully utilized to provide access since 1998

when the Building reopened. (See 56.1 Statement ¶ 33).

Each lift travels between two levels, the sidewalk level and the Plaza level. At each level

there is a call button next to a key switch adjacent to the lift door. To call the lift to a level if it is

positioned at another level, the call button must be unlocked before it is pressed. To operate the

lift once it is entered, the operator must also turn a key switch that locks the "up" and "down"

buttons on a control panel inside the lift. (See 56.1 Statement ¶ 32).

Prior to October 12, 2001, all doormen at the Building wore lift-keys around their necks

to unlock the lift switches and assisted all lift users in operating the lifts. As of October 12,

2001, a "fixed key" system has been established to provide users unassisted access to and

operation of each lift. (See 56.1 Statement ¶ 46, 47). Under this system, a key is present in each

lock. Each key is attached to a cable "leash" affixed at or near the lock to prevent loss or

misplacement of the key. (See 56.1 Statement ¶ 47). The Building's Engineering Department

also includes in its rounds inspection of the lifts so if a key is missing because of vandalism it is

replaced. Keys are also kept with security should vandalism occur between rounds and should a

person requiring assistance need to access the elevator. Vandalism is not a normal occurrence,

but it might happen and the Building wants to make every effort that no one in inconvenienced.

(See 56.1 Statement ¶ 48).

As a result of polio and other medical issues, plaintiff uses a motorized wheelchair. (See 56.1 Statement ¶ 22). Levine's disability does not affect his sight and he does not read brail, or need to read brail.  (See 56.1 Statement ¶ 23). He therefore admits that he did not encounter any barriers regarding signage at the Building. (See 56.1 Statement ¶ 23).

Levine does not have impairments with respect to his arms or fingers- he can use both arms.  (See 56.1 Statement ¶ 24). Levine uses a key to enter his apartment, and is able to turn that key, without any problems.  (See 56.1 Statement ¶ 25).  Plaintiff admits that he is physically capable of grasping, pinching or turning keys such as the key provided by TIHT for the wheelchair lifts.  (See 56.1 Statement ¶ 25).  Levine does not need a lever to operate the wheelchair lift.  (See 56.1 Statement ¶ 35).

At deposition, plaintiff could not recall the specific dates of his restaurant visits, but recalled that he visited the Jean Georges restaurant on two occasions. Those visits gave rise to his claims in this lawsuit. Plaintiff admits that during his first visit to the restaurant, he did not encounter any barriers other than the fact someone had to bring him the key. (See 56.1 Statement ¶ 38).  The lifts were properly working when he first visited the Building.  (See 56.1 Statement ¶ 36).  Plaintiff does not recall any issues during his second and last visit at the restaurant.  (See 56.1 Statement ¶ 39).

Plaintiff has not since eaten at the restaurant located at the Building.  Plaintiff has not been prevented from going back to the restaurant since he was there seven (7) years ago.  (See 56.1 Statement ¶ 40, 41).

Plaintiff admits that he encountered no accessibility barriers inside the restaurant.  (See 56.1 Statement ¶ 37).  During his visits to the Building, plaintiff did not use the parking deck and

he is not aware of accessibility issues with respect to the parking deck.  (See 56.1 Statement ¶ 43).  Plaintiff seeks only injunctive relief, not monetary damages. (See 56.1 Statement ¶ 42).

## POINT I

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).   A fact is material when it " 'might affect the outcome of the suit under the governing law.' Bouboulis v. Transport Workers Union of Am., 442 F.3d 55, 59 (2d Cir.2006) quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

In considering a summary judgment motion, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." Bradford v. The Barge B-10, 1999 Westlaw 1256248 (S.D.N.Y. 1999) (Judge Mukasey), quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994).  Nevertheless, Rule 56 jurisprudence is clear in "provid[ing] that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Bradford, supra quoting Anderson, supra at 247-248.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Sanders v. Madison Square Garden, L.P., 2007 WL 1933933 (S.D.N.Y.) quoting Anderson, supra at 247-48.  The non-moving party, therefore, "must do more than simply show that there is some metaphysical doubt as to the material facts." Bradford, supra, quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Most certainly, "[c]onclusory allegations

6

will not suffice to create a genuine issue." Bradford, *supra*, quoting Delaware & Hudson

Railway v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990).

 To defeat a summary judgment motion, the non-moving party must set forth "concrete

particulars" showing that a trial is needed. National Fire Insurance Co. v. Deloach, 708 F.Supp.

1371, 1379 (S.D.N.Y. 1989) quoting R.G. Group, Inc. v. Horn & Hardart, 751 F.2d 69, 77 (2d

Cir. 1984). In other words, bald assertions or conjecture unsupported by evidence, in admissible

form, are insufficient to defeat a motion for summary judgment. Quindlan v. Freeman

Decorating, Inc., 160 F.Supp.2d 681, 684 (S.D.N.Y. 2001) citing Carey v. Crescenzi, 923 F.2d

18, 21 (2d Cir. 1991) and Western World Insurance Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d

Cir. 1990). Establishing such facts requires going beyond the allegations of the pleadings, as the

moment has arrived " 'to put up or shut up." ' Russo v. Banc of America Securities, LLC., 2007

WL 1946541 (S.D.N.Y.) quoting Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000)

(citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of

fact. Id.

## POINT II

### PLAINTIFF'S CLAIMS REGARDING DOORMAN ASSISTANCE ARE MOOT AND PLAINTIFF LACKS STANDING TO SUE REGARDING KEY USAGE AND LIFT SIGNAGE.

**A.** **Injunctive relief and attorney's fees are the only remedies available to private ADA Plaintiffs.**

 Private plaintiff's remedies under Title III are limited to injunctive relief and attorney's

fees. 42 U.S.C. §12188(a)(1) and (2), 42 U.S.C. §12205. (See also Stan v. Wal-Mart Stores, 111

F.Supp.2d 119, 124 (N.D.N.Y. 2000). In this case, plaintiff lacks standing to seek injunctive

relief because he cannot establish concrete, particular, imminent and irreparable harm, and his

claims will not be redressed even if he achieves a favorable decision.

**B.   Injunctive Relief Requires a Showing of imminent future injury, not simply an injury in the past.**

The party invoking the court's jurisdiction bears the burden of proving standing with "competent proof" by a preponderance of the evidence. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Perry v. Village of Arlington Heights, 186 F.3d 826, 829 (7th Cir. 1999). To have standing to seek injunctive relief under Article III of the Constitution, plaintiffs must demonstrate: 1) they have suffered an "injury-in-fact" (504 U.S. at 560); 2) that there is a causal connection between the asserted injury-in-fact and the challenged action of the defendant (*Id.*); 3) that "the injury will be redressed by a favorable decision" (*Id.* at 561); and 4) that they will suffer irreparable harm in the absence of an injunction. (Stan, *supra*, 111 F.Supp.2d at 119 citing Rodriquez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 235 n. 9 (2d Cir. 1999), Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), and New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)).

Injunctions can address only specific and imminent future injury. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges…a real and immediate--as opposed to a merely conjectural or hypothetical--threat of *future* injury." Wooden v. Board of Regents of University System of Georgia, et al., 247 F.3d 1262, 1284 (C.A. 11 (Ga.)). That injury must be "concrete, particularized and imminent." Levy v. Mote, et al., 104 F.Supp.2d 538, 544 (D.Md. 2000). "Injury in the past does not support a finding of an Article III [of the Constitution] case or controversy where the only relief sought is declaratory judgment." Maloney v. Federal Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir. 1999).

### C. Plaintiff's Claim Regarding the Access to Lift Keys Is Moot.

An injunction is an equitable remedy. Levy, *supra,* 104 F.Supp.2d at 544, citing

Weinberger v. Romero-Barcelo, 456 U.S. 305, 311, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).  The

decision to grant or deny an injunction lies within the sound discretion of the district judge,

whose judgment will not be disturbed absent an abuse of that discretion.  Merrill Lynch, Pierce,

Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1055 (4th Cir. 1985).  Where a plaintiff and a

defendant present competing claims of injury, the traditional function of equity has been to arrive

at a "nice adjustment and reconciliation" between the competing claims.  Weinberger, *supra,* 456

U.S. at 312, 102 S.Ct. 1798.  In such cases, the court "balances the conveniences of the parties

and possible injuries to them according as they may be affected by the granting or withholding of

the injunction."  *Id.*

Under appropriate circumstances, a court may justifiably withhold injunctive relief

altogether even though the party sought to be enjoined has violated the law.  Weinberger, 456

U.S. at 313, 320, 102 S.Ct. 1798; Prows v. Fed. Bureau of Prisons, 981 F.2d 466, 468 (10th Cir.

1992); Woerner v. United States Small Bus. Admin., 934 F.2d 1277, 1279-80 (D.C.Cir. 1991).

"[T]he award of an...injunction by courts of equity has never been regarded as strictly a matter

of right, even though irreparable injury may otherwise result to the plaintiff." citing Yakus v.

United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

A district court may exercise its discretion to deny injunctive relief as moot.  Mootness is

a jurisdictional defect that can be raised at any time by the parties or the court sua sponte.  Barilla

v. Ervin, 886 F.2d 1514, 1519 (9th Cir. 1984).  "A claim is moot if it has lost its character as a

present, live controversy."  United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 698 (9th

Cir. 1984) (citation omitted).  The court cannot take jurisdiction over a claim to which "no

effective relief can be granted." *Id*. If an ADA "plaintiff[ ][has] already…received everything to which [he] would be entitled, *i.e.*, the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that [this] plaintiff[ ] will again be subjected to the same wrongful conduct by this defendant." Independent Living Resources v. Oregon Arena Corp., 982 F.Supp. 698, 771 (D.Or. 1997). "If those claims are moot, then there is no need for [the] court to decide whether there was in fact any violation of the relevant statutes." *Id.*

Numerous federal courts have dismissed ADA claims as moot where defendants have cured the alleged violation and there is no reason to believe that the violation will recur. Stan, *supra,* 111 F.Supp.2d at 126; Campbell v. Griesberger, 80 F.3d 703, 705 (2d Cir. 1996); Parr v. L & L Drive Inn Restaurant, 96 F.Supp. 1065 (D. Hawaii 2000); Azrélyant v. The Manischewitz Co., 2000 Westlaw 264345 (E.D.N.Y. 2000); Independent Housing Services of San Francisco v. Fillmore, 840 F.Supp. 1328 (N.D.Cal. 1993); Levy, *supra;* Emenick v. Kahala L & L, Inc., 2000 Westlaw 687662 (D. Hawaii 2000); O'Brien v. Werner Bus Lines, Inc., 1996 Westlaw 82484 (E.D.Pa. 1996).

Plaintiff did not encounter any barriers to the restaurant other than the fact that a doorman had to bring him the key to operate the lift. (See 56.1 Statement ¶ 38). He admits that when he visited the Building, the lifts worked properly. (See 56.1 Statement ¶ 36). His only complaint is that he had to obtain a doorman to provide a key to operate the lift.

Prior to October 12, 2001, doormen stationed at the lobby entrance wore lift keys around their necks to assist disabled visitors in operating the lifts. (See 56.1 Statement ¶ 46). As of October 12, 2001, permanently fixed keys exist at each lock to allow self-operation by users. (See 56.1 Statement ¶ 47). Each key is attached to a cable "leash" affixed at or near the lock to

prevent loss or misplacement of the key.  (See 56.1 Statement ¶ 47). The Building's Engineering

Department also includes in its rounds inspection of the lifts so if a key is missing because of

vandalism it is replaced.  (See 56.1 Statement ¶ 48).  As a contingency, Keys are also kept with

security should vandalism occur between rounds and should a person requiring assistance need

to access the elevator.     (See 56.1 Statement ¶ 48).   Assuming that the minor inconvenience of

doorman assistance prior to October 12, 2001 violated the ADA, that claim is now mooted by the

fixed key system.  Plaintiffs' attorneys' fee claim is also moot in light of the United States

Supreme Court's holding that, absent a court ordered injunction, ADA plaintiffs cannot recover

attorney's fees by claiming they were a catalyst for the elimination of an alleged ADA violation.

Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532

U.S. 598, 604-05, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), and J.S. & M.S. v. Ramapo Central

School Dist., 165 F.Supp.2d 570 (S.D.N.Y.2001). Thus plaintiffs' ADA claims for injunctive

relief and attorney's fees are now entirely moot.

**D.  Plaintiff lacks standing for alleged violations that pertain to sight or dexterity
impairments.**

As previously held in this matter, the injury-in-fact that forms the basis for Plaintiff's

standing has two parts: (1) the direct injury from personally encountered disability-based

discrimination at Defendant's property, and (2) deterrence from using Defendant's property

because it is not ADA compliant. Disabled in Action of Metropolitan New York v. Trump Intern.

Hotel & Tower, 2003 WL 1751785, at *6 (S.D.N.Y.).  Where an alleged Americans with

Disabilities Act (ADA) violation does not affect a plaintiff's disability, that plaintiff is not injured

and therefore has no standing to bring suit.   Access 4 All v. Trump Intern. Hotel & Tower

Condominium, 458 F.Supp. 2d 160 (S.D.N.Y. 2006) quoting Steger v. Franco, 228 F.3d 889, 892

(8th Cir.2000). In other words, ADA plaintiffs have standing to sue only with respect to architectural features that personally encountered and which relate to their particular disability.

Plaintiff has no vision or hearing impairments, nor does he have any impairment with respect to the use of his arms or hands.  He uses keys to enter his own apartment and does not need lever like modifications to operate the lift.  (See 56.1 Statement ¶ 25).  As discussed below, the ADA does not prohibit use of keys and indeed requires keys in operating lifts.  Assuming key utilization would violate the ADA, plaintiff lacks standing to sue because he does not have any impairment regarding the use of his hands or arms.

## POINT III

### DEFENDANTS INCREASED ACCESSIBLITY BY INSTALLING WHEELCHAIR LIFTS DURING THE 1995 RENOVATION

Plaintiff claims that the 1995 renovation resulted in decreased accessibility at the building entrance.  Plaintiffs' claim must be summarily dismissed because, as a matter of fact, prior to the alteration, only stairs provided access and stairs are not an accessibility feature recognized by the ADA. Now, as a result of the renovation, wheelchair lifts provide access from street level to the top of the plaza. As a matter of law, lifts may be used as a vertical access element of an accessible path of travel. ADAAG 4.1.6(3)(g); TAM III-7.7000(1)(c); 28 CFR § 36.403(e); 28 CFR § 35.151(c).  Thus the 1995 renovation increased accessibility in a manner that complies with the ADA.

**A.     In alterations, Wheelchair lifts are an appropriate element of an accessible path of travel.**

The ADA imposes three levels of accessibility requirements: relatively minor requirements for existing buildings, slightly increased requirements for altered buildings and far reaching requirements for newly constructed buildings. Specifically, existing buildings must

remove "architectural barriers" to accessibility only where such removal is "readily achievable."
[4] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R § 36.304.  Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9); 28 C.F.R § 36.304(a).  Newly constructed facilities must meet all of the strict technical accessibility standards set forth in the Americans With Disabilities Act Accessibility Guidelines for Buildings and Facilities ("ADAAG") issued by The Architectural and Transportation Barriers Compliance Board ("Access Board").[5]  Altered portions of buildings must meet some, but not all of the accessibility standards for new construction. (See, for example, Exhibit "K", ADAAG 4.1.6(1)(a) to (k); ADAAG 4.1.6(3)(a) to (b); and ADAAG 4.1.7).

Section 3.5 of ADAAG defines an "alteration" as

> A *change* to a building or facility that affects or could affect the usability of the building or facility or part thereof.  **Alterations** include, but are not limited to, remodeling, **renovation**, rehabilitation, reconstruction, historic restoration, resurfacing of circulation paths or vehicular ways, changes or rearrangement of the structural parts or elements and changes or rearrangement in the plan configuration of walls and full height partitions.  Normal maintenance, reproofing, painting or wallpapering, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility. [**Emphasis added**.]

(See Exhibit "K", ADAAG at p.3)

---

[4] Existing facilities are facilities first occupied before January 26, 1993. 28 C.F.R § 36.401(a).

[5] The Access Board is an independent federal agency established pursuant to Section 502 of the Rehabilitation act of 1973 charged with the responsibility of issuing technical accessibility guidelines. See 42 U.S.C. § 12204; 56 Fed.Reg. 35, 408.  Department of Justice regulations incorporating "ADAAG" are codified at 28 C.F.R. § 36.101 *et seq.*, and the ADAAG is codified as law at 28 C.F.R. Part 36, Appendix A.  ADAAG is based upon the Board's 1982 Minimum Guidelines and Requirements for Accessible Design (MGRAD) and follows the numbering system and format of the private sector American national Standard Institute's ANSI A117.1 standards.  ADAAG supplements MGRAD and tries to be consistent both with it and with ANSI. 56 Fed. Reg. 35,544, 35,585 (1991).

If alterations involve an area containing a "primary function," then related minor additional work must also be done to create an "accessible path of travel from the building exterior to the altered area." ADAAG 4.1.6(2); 28 C.F.R § 36.403. (See Exhibit "K", ADAAG at p.15)  In creating an accessible path of travel from a building exterior to altered interior portions, the premises may utilize, at its option, either ramps, elevators or lifts to provide vertical access. ADAAG 4.1.6(3)(g); TAM III-7.7000(1)(c);[6] 28 CFR § 36.403(e)(2)).  (See also 28 CFR § 35.151(c) applicable only to government facilities but nevertheless instructive).  The ADA does not create a priority or preference for any vertical access element over another.  *Id.*  Indeed, a comparison of the vertical access requirements for new construction to vertical access requirements for alterations shows that, in creating an accessible path of travel, lifts may **always** be used instead of ramps or elevators as a matter of law.  This difference is consistent with the ADA's overall concept of requiring relaxed standards for existing or altered buildings as compared to newly constructed buildings.

In new construction, elevators and ramps are equivalent and are generally required to provide vertical accessibility, except in the case of certain small buildings. 42 U.S.C. §12183(b); 28 C.F.R § 36.401(d); ADAAG 4.1.3(5) Exception 3; TAM Section III-7.5115(3). (See Exhibit "K", ADAAG at p.17). In new construction, platform lifts can be used in place of elevators (or ramps) only in providing access to performing areas in assembly occupancies, wheelchair seating locations in assembly occupancies, incidental space or rooms not open to the public with a maximum capacity of five. (See Exhibit "K", ADAAG at p.17, ADAAG 4.1.3(5) Exceptions 4(a) to (d)).

---

[6] "TAM" refers to the Americans with Disabilities Act Title II Technical Assistance Manual issued by the Department of Justice as required by the ADA.  42 U.S.C. § 12206.

14

In comparison, in the case of alterations, lifts may **always** be used instead of elevators (or ramps) as a vertical access element of a path of travel. ADAAG 4.1.6(3)(g) ("In alterations, platform lifts…may be used as part of an accessible route [and] [t]he use of lifts is not limited to the four conditions in exception 4 of 4.1.3(5)"); TAM III-7.7000(1)(c)(in the case of alterations, entities are "permitted to use platform lifts as part of an accessible route, without having to meet any of the conditions for use of platform lists applicable in new construction context."); 28 CFR § 36.403(e)(2). See also 28 CFR § 35.151(c). In other words, lifts can **always** be used instead of ramps or elevators to provide vertical access along an accessible path of travel.

The 1995 renovation constituted an *alteration*. (See Exhibit "K", ADAAG at p.3). The building was built in 1969 as an office tower known as the Gulf & Western Building. (See 56.1 Statement ¶ 26). The 1995 renovation provided three **new** and separate **use** areas of the Building and the elevator banks servicing them: Residential, Hotel and Restaurant. (See 56.1 Statement ¶ 28). The renovation of the Building and change in use unequivocally characterize the Building as an alteration. (See Exhibit "K", ADAAG at p.3). As such, the use of wheelchair lifts is permitted as an accessible route. Pursuant to ADAAG 4.1.6(3)(g); TAM III-7.7000(1)(c); 28 CFR § 36.403(e); and 28 CFR § 35.151(c), as a matter of law, the Condominium is permitted to use lifts as a vertical access element of that accessible path of travel. Since the 1995 renovation added a vertical access element where none previously existed, plaintiff's claim of decreased access must be dismissed.

**B.     Wheelchair Lifts Must be Key Operated as a Matter of Law.**

Section 4.11.2 of ADAAG states that if wheelchair lifts are used, they shall comply with 4.2.4,[7] 4.5,[8] 4.27[9] and ASME A17.1 Safety Code for Elevators and Escalators, Section XX, 1990

---

[7] Clear floor or ground space for wheelchairs. (See Exhibit "K", ADAAG at p.18-19)

(hereinafter "ASME Safety Code for Elevators"). (See Exhibit "K", ADAAG at p.40).

Significantly for this matter, the ASME Safety Code for Elevators requires key operation for

vertical wheelchair lifts, and specifically states:

> **2000.10a Key Operation**. Operation of the car from the upper or lower landing and from the car **shall be controlled by a key**. The key-operated control shall be operated by a lock having a five-pin or five-disk combination with the key removable only in the "off" position. **A key-operated switch** shall be provided at each station which will allow a control switch at that station to become effective only when the key is in the "on" position. "Up" and "down" control switches at all stations shall be by means of a continuous pressure device. Controls shall be in accordance with the requirements of ANSI A117.1…**[Emphasis added.]**

(See Exhibit "L", ASME Safety Code for Elevators at p. 263-4)

The wheelchair lifts are required to be key-operated, pursuant to ADAAG. (See Exhibit

"L", ASME Safety Code for Elevators at p. 263-4). Therefore, the key-operated wheelchair lifts

comply with the ADA, and arguments by Plaintiff's counsel that Defendants' premises are

inaccessible are baseless.

## POINT IV

## ALL CLAIMS AGAINST TIHT COMMERCIAL, LLC., SHOULD BE DISMISSED

Commercial was added as an individually named in Plaintiff's Second Amended

Complaint. However, the allegations in the Complaint were not otherwise changed, so it is not

possible to determine, which claims Plaintiff's counsel asserts against Commercial, as opposed

to claims against Condominium. Regardless, the claims against Commercial are without basis.

Commercial is the lessor of the Restaurant and Garage- the two (2) commercial units of

the Building. (See 56.1 Statement ¶ 30). Commercial does not maintain the wheelchair lifts.

(See 56.1 Statement ¶ 30). Further, according to Plaintiff, there are no accessibility issues at the

---

[8]  Mandates that ground and floor surfaces of floors, walks, ramps, stairs and curb ramps are stable, with changes in level less than ¼ inch and slope no greater than 1:2. (See Exhibit "K", ADAAG at p.26-28)
[9]  Controls and operating mechanisms should have clear floor space and be within specified height and reach for disabled persons. Controls and operating mechanisms should also be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. (See Exhibit "K", ADAAG at p.56-58).

restaurant, and he has not been prevented from going back to the restaurant since he was there

seven (7) years ago.   (See 56.1 Statement ¶ 37, 38, 40, 41).  During his visits to the Building,

Plaintiff has not used the parking deck and there are no accessibility issues with respect to the

parking deck.  (See 56.1 Statement ¶ 43).

    Plaintiff does not have standing to proceed to trial regarding his allegations against

Commercial.  Access 4 All, 458 F.Supp. 2d at 160; Steger, 228 F.3d at 892.  Plaintiff admits

there are no accessibility issues at the restaurant, and that he further is not aware of accessibility

issues with respect to the parking deck.  As such, Plaintiff does not have any claims against

Commercial because Plaintiff admits that there are no accessibility issues at the two (2) entities

which comprise Commercial- the restaurant, and garage.  Plaintiff did not sustain an injury-in-

fact as a result of Commercial's conduct and therefore, does not have standing to pursue claims

against Commercial.

    Since Plaintiff does not assert any claims against Commercial, he also does not have

standing because there is no possibility of redress, if Plaintiff's claims against Commercial

proceed to trial. Access 4 All, Inc., 458 F.Supp.2d at 167; Mancuso v. Consolidated Edison Co.

of New York, 130 F.Supp.2d 584, 596 (S.D.N.Y. 2001).

## CONCLUSION

    For the foregoing reasons, Condominium and Commercial's motion for summary

judgment must be granted.

                  By:_____
                  Gregory R. Begg (GB-0822)
                  Jordan K. Merson (JM-7939)
                  PECKAR & ABRAMSON, P.C.
                  Attorneys for Defendants,
                  Trump International Hotel & Tower Condominium
                  70 Grand Avenue
                  River Edge, New Jersey  07661

Dated: July 23, 2007        201-343-3434